UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT SCHILLING, | |
| *Plaintiff,* | |
| v. | Civil Action No. 1:22-cv-162 |
| NANCY PELOSI, *et al.,* | |
| *Defendants*. | |

## <u>ROBERT SCHILLING'S MEMORANDUM OF LAW<br>IN OPPOSITION TO MOTION TO DISMISS</u>

NOW COMES Robert Schilling, by and through undersigned counsel, and files this opposition to the Defendants' Motion to Dismiss.

## I. Introduction

The House of Representatives and its officers[1] want to have their cake and eat it too. Mr. Schilling alleges that the House has allowed its investigations and Committees to be privately financed in violation of its own rules and applicable law by accepting in-kind services of outside consultants to perform work typically performed by congressional staff. Amended Petition at p. 3, see also Amend. Pet. at ¶¶ 35, 49, 52-58. The House responds by claiming that this activity, despite transgressing against not just House Rules but federal law, is nevertheless shielded from

---

[1] The Motion to Dismiss appears to raise the same arguments on behalf of all Defendants without differentiating between the impact of such arguments on each Defendant. For ease of reference, this Memorandum will occasionally refer to the Defendants collectively or as "the House," but Plaintiff notes that various of the arguments the Defendants raise, such as Speech or Debate Clause immunity, may apply differently to each of the Defendants.

scrutiny by doctrines of sovereign or legislative immunity that protect government officials who work in an official or legislative capacity.

But the House cannot have it both ways: if by this conduct the House is engaged in its ordinary and lawful business, then Mr. Schilling is entitled to access the records of official proceedings under the well-established Common Law Right of Access and no waiver of sovereign immunity is required for a writ of mandamus to issue (under the "so-called *Larson-Dugan* exception to sovereign immunity." See *Judicial Watch, Inc. v. Schiff*, 474 F. Supp. 3d 305, 311 (D.D.C. 2020).) Conversely, if the relevant individuals are acting in a manner that is unlawful or *ultra vires*, they cannot claim protection that applies only for officials acting in accordance with lawfully delegated power. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690, 69 S. Ct. 1457, 1461 (1949) ("relief can be granted, without impleading the sovereign, only because of the officer's lack of delegated power."). Regardless, Mr. Schilling is entitled to the relief he seeks and the Defendants are not shielded from suit.

## II.     Standard of Review

The Defendants here seek to have this case dismissed both under Fed. R. Civ. P. 12 (b)(6) and under Fed. R. Civ. P. 12 (b)(1). Because the two rules have slightly different standards, Mr. Schilling will address each here.

### a) Rule 12 (b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim crosses from conceivable to plausible when it contains factual allegations that, if proved, would 'allow the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.'" *Banneker Ventures v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), quoting *Iqbal*, 556 U.S. at 678. This court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Id*. "In determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch*., 117 F.3d 621, 624, 326 U.S. App. D.C. 67 (D.C. Cir. 1997).[2]

### b)  Rule 12 (b)(1)

Under Rule 12(b)(1), a claim must be dismissed if it fails to allege facts which, if true, would establish the Court's subject-matter jurisdiction. *Mahmood v. United States Dep't of Homeland Sec*., Civil Action No. 21-1262 (RC), 2021 U.S. Dist. LEXIS 242386, at *7-8 (D.D.C. Dec. 20, 2021). See also Fed. R. Civ. P. 12(b)(1). Just as with Rule 12 (b)(6), in evaluating subject-matter jurisdiction, courts must take the facts stated in the complaint as true when considering a motion under Rule 12(b)(1). *Am. Nat'l Ins. Co. v. FDIC*, 642 F. 3d 1137, 1139, 395 U.S. App. D.C. 316 (D.C. Cir. 2011).[3]

---

[2] "If the district court considers other facts, it must convert the motion to dismiss into a motion for summary judgment and 'provide the parties with notice and an opportunity to present evidence in support of their respective positions.'" *Hurd v. District of Columbia*, 431 U.S. App. D.C. 83, 90, 864 F.3d 671, 678 (2017), quoting *Kim v. United States*, 632 F.3d 713, 719, 394 U.S. App. D.C. 149 (D.C. Cir. 2011).

[3] Courts are empowered to look to materials outside of the pleadings where appropriate. See *Ramirez v. United States Immigration & Customs Enforcement*, 338 F. Supp. 3d 1, 21 (D.D.C. 2018), citing *Am. Freedom L. Ctr. v. Obama*, 821 F.3d 44, 49, 422 U.S. App. D.C. 227 (D.C. Cir. 2016). Mr. Schilling respectfully submits that to the extent this Court wishes to consider any evidence outside the pleadings, he should be provided notice pursuant to the authorities cited in fn. 2, *supra*.

### III.    Facts Alleged in the Petition

Because both Rule 12 (b)(1) and Rule 12 (b)(6) require the Court to accept Mr. Schilling's pleaded facts and all reasonable inferences arising therefrom as true for purposes of the instant Motion, Mr. Schilling provides a brief summary of the most pertinent allegations in his Complaint as amended here:

Mr. Schilling seeks certain records pertaining to the use of outside private donations, funds, or in-kind goods or services to conduct and support the activities of, or pay the expenses of, a congressional office in violation of House Rules, including the use of privately provided consultants performing work typically performed by congressional staff. Amend. Pet. at pp. 1-5. The records sought pertain to a recently revealed practice of providing donor-financed services to congressional offices of the kind typically performed by congressional staff, purportedly to help compensate for staff lost due to Congress reducing its and its offices' staff budget but elsewhere admittedly to help plan a congressional investigation of private parties. *Id*. This is a practice that was the subject of great public interest and past ethics complaints filed in the 1990s against, e.g., then-Speaker of the House Newt Gingrich under House Rule 24's predecessor, then-Rule 45. Amend. Pet at p. 3 and ¶ 73, 86. In those cases, a non-profit's employees provided basic office functions for Mr. Gingrich in apparent violation of the prohibition against the use of unofficial resources for official purposes. *Id*. In this current case, the staff work being performed is that of professional staff planning investigative hearings of shared political opponents, with compelled testimonies and subpoenas of private parties. Amend. Pet. at ¶66. There also is reason to believe this privately-aided, non-legislative investigation is not being undertaken to achieve legitimate legislative purposes but instead seeks to engineer a referral to the Department of Justice to assist third-party litigants and the Executive branch. Amend. Pet. at ¶21 *et seq*.

More specifically, the House, through its Committee on Oversight and Reform ("the Committee), "has enlisted the aid of 'a lot of people' involved in planning [prior hearings from the 1990s] for advice and planning." Amend. Petition, ¶ 10. That is, the Committee has brought in former staff to apply the skills and experience obtained as staff to replicate past work done as staff, meaning to perform work typically performed by congressional staff.  The public record makes clear that at least some of these consultants founded and perform such work through an organization called Co-Equal created for this very purpose, underwritten by donors who openly acknowledge that they paid hundreds of thousands of dollars to these consultants' organization, to "support work to enhance congressional effectiveness and oversight" and "to provide… advice that helps members of Congress …conduct effective oversight." Amend. Pet. ¶¶ 31-34, 38-43. The *New York Times* published a profile of Co-Equal conducted with the assistance of these consultants, who provided quotes and congressional sources to praise their influence, acknowledging that their purpose was to try and fill perceived staffing gaps. Amend. Pet. ¶¶ 32-34, 39, 42, 44-45.

There is no reasonable legislative purpose of the investigation which privately afforded "staff" have been brought in — unofficially but now admittedly — to help guide based on their experience as former staff. Amend. Pet. At p. 3, ¶¶ 17-18, 67, fn. 5. There is, however, reason grounded in the public record to believe that the objective of this use of Committee resources by Members and staff, including but not limited to the engagement of outside parties to perform work typically performed by congressional staff, is to assist third-party litigation against the investigation's targets, and to aid in the satisfaction of a campaign vow by then-candidate Joseph R. Biden to order the Department of Justice to facilitate certain litigation. Amend. Pet. ¶¶ 19-22.

**IV. Argument**

The Defendants cannot have their cake and eat it too. If their privately-financed actions are *ultra vires* and unlawful, sovereign immunity will not shield them from liability or from the jurisdiction of this Court. But if the Defendants acted within the scope of their lawfully delegated duties, there is no sovereign immunity defense available to them in a suit for mandamus. Regardless, the records at issue in this case are public and government records to which Mr. Schilling has a claim of right.

**a. Sovereign Immunity does not Apply**

The Defendants are correct to note that sovereign immunity is a doctrine "under which "[t]he United States is protected from unconsented suit." Mot. To Dismiss at p. 5-6, quoting *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). But the doctrine of Sovereign Immunity applies expressly to *the United States*, and to officers carrying out the lawful business of the United States. Officers of the sovereign are not necessarily the sovereign, and the doctrine does not provide a shield behind which wrongdoers who have abused or mis-used governmental power can hide, nor does it immunize government officials from actions for mandamus.

In this suit, Mr. Schilling seeks mandamus in the form of an order requiring the Defendants to carry out their duties under the Common Law Right of Access. It is well-settled in this Circuit that "If a plaintiff seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity… no separate waiver of sovereign immunity is needed." *Wash. Legal Found. v. United States Sentencing Comm'n*, 319 U.S. App. D.C. 256, 89 F.3d 897, 901 (1996). In *Wash. Legal Found.,* the D.C. Circuit cited the Supreme Court for the proposition that "[t]here may be… suits for specific relief against officers of the sovereign which are not suits against the sovereign…. Where the officer's powers are limited by statute, his

actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief." *Id.*, citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949).

The D.C. Circuit has already specifically rejected sovereign immunity as a freestanding defense to an action under the Common Law Right of Access. In *Wash. Legal Found.,* the Circuit Court ultimately denied a petitioner access to the records he sought, but did so on the merits rather than on the freestanding basis that it the District Court lacked subject matter jurisdiction over such a claim. *Wash. Legal Found.*, 89 F.3d at 901-02. ("Whether the Larson-Dugan exception applies to this case depends upon whether the Government has a duty to the plaintiff, viz. to allow it access to certain government records... We agree with the district court, therefore, that the question of jurisdiction merges with the question on the merits.").

In this action, Mr. Schilling has sued the House of Representatives itself and one of its Committees (largely because of legal positions taken by those entities and their respective insistence that the Committee or the House itself are the only proper defendants in actions of this character). But Mr. Schilling has also filed this suit "for specific relief against officers of the sovereign" in which Mr. Schilling alleges that "the officer[s are] not doing the business which the sovereign has empowered [them to] do or… is doing it in a way which the sovereign has forbidden." *Id*. Specifically, Mr. Schilling alleges that the Defendants, including various individual officers, are unlawfully withholding from him copies of records to which he is legally entitled. And, Mr. Schilling goes a step further to allege that the underlying records were generated as part of an unlawful exercise of governmental power and use of its resources and

positions, in which private interests were permitted to pervert the powers of the Congress to serve private rather than public ends. Because Mr. Schilling's suit seeks mandamus against officials for acts which he alleges they have either performed unlawfully or unlawfully failed to perform, sovereign immunity provides those Defendants no escape from this Court's subject matter jurisdiction.

### b. The Speech or Debate Clause Provides Defendants No Refuge

The Defendants also believe that this suit is "absolutely barred by the Speech or Debate Clause of the Constitution." Mot. to Dismiss at p. 22, citing U.S. Const., Art. I, § 6, cl. 1. But the Speech or Debate clause immunizes various individuals[4] from suit for actions which are legislative in nature. But Mr. Schilling's case does not seek relief for legislative actions, and only one of the five named defendants is a "Representative" subject to the clause. Instead, this case was brought against Defendants for ministerial actions relating to record-keeping and seeks relief in the form of an order granting access to records which Mr. Schilling asserts reflect extra-legislative activity, including but not limited to quasi-judicial activity that is adjudicative in character.

---

[4] By its own terms, the clause is limited to "The Senators and Representatives" and does not immunize subordinate officers or employees who are not members of the House. Plaintiff acknowledges that *Consumers Union of United States, Inc. v. Periodical Correspondents' Asso.*, 169 U.S. App. D.C. 370, 515 F.2d 1341, 1349 (1975), quoting *Gravel v. United States*, 408 U.S. 606 (1975), held that "the Speech or Debate Clause applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." Plaintiff respectfully suggests that *Consumers Union* and *Gravel* contradict the plain language of the Constitution and are susceptible to being overruled. *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 825, 135 S. Ct. 2652, 2678 (2015) (Roberts, J., dissenting) (terms should be defined in such a way that the meaning is uniform throughout the Constitution). However, to the extent that *Gravel* and *Consumers Union* govern in this matter, Plaintiff nevertheless submits that none of the actions by the Defendants who are not Members of Congress are legislative in nature and that the administrative officers named here cannot properly be considered aides of any identifiable member.

The Speech or Debate Clause "confers on members of Congress immunity for all actions within the legislative sphere, even though their conduct, if performed in other than legislative contexts, would in itself be unconstitutional or otherwise contrary to criminal or civil statutes." *Rangel v. Boehner*, 20 F. Supp. 3d 148, 177 (D.D.C. 2013) (cleaned up). In *Rangel*, this Court held that the purpose of the Speech or Debate Clause is "to insure that the *legislative function* the Constitution allocates to Congress may be performed independently." *Id*., 20 F. Supp. 3d at 176 (internal citations omitted) (emphasis added). "[C]overed legislative acts consist of matters that are an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Id*.

This Court held in *Rangel* that the Speech and Debate Clause protects members of Congress (but not necessarily the institutions of Congress or its administrative officers) from being sued for "covered acts" which are part of the "legislative function." But *Rangel* is also explicit that for an act to fall within the legislative sphere, it must be an act "which the Constitution places within the jurisdiction of either House." Further, however, not all activity is "within the legislative sphere." "The legislative process… includes delivering an opinion, uttering a speech, or haranguing in debate; proposing legislation; voting on legislation; making, publishing, presenting, and using legislative reports; authorizing investigations and issuing subpoenas; and holding hearings and introducing material at Committee hearings." *Id*. at 177 (internal citations omitted).

Mr. Schilling's requests, as articulated in the Amended Petition which is before the Court, do not seek to in any way challenge the independence of the legislature. Nor does Mr.

Schilling seek to hinder the legitimate legislative purposes the House is entrusted to carry out under the Constitution. Instead, Mr. Schilling seeks to preserve the integrity of the legislative branch. Abundant information in the public domain which is the express root of Mr. Schilling's requests suggests the use, by a Member of Congress and staff to be sure, of authorities delegated to a Committee, with private parties and in ways that violate House Rules and federal statutes, and with an apparent motivation to assist *private* (non-legislative) ends.

Further, rather than posing a threat from some other branch, Mr. Schilling's requests actually promote the independence of the legislature. For reasons including but not limited to those set forth in the original Petition, Mr. Schilling has a colorable belief that the objective of the improper use of Committee resources by Members and staff which he has documented, including evidence that outside parties were provided or funded as in-kind gifts to perform work typically performed by congressional staff, is to assist the Executive Branch by providing it with a referral to the Department of Justice, to aid third-party litigation and in pursuit of a remarkable campaign promise which political activists and supporters are now demanding President Biden satisfy. Amend. Pet. ¶¶ 19-22.

In this case, the records Mr. Schilling requests are not related to the Defendants' duties "in a session of the House by one of its members in relation to the business before it," *Dombrovski v. Eastland*, 421 U.S. at 503, 95 S.Ct. 1813, and therefore the Speech or Debate Clause does not immunize any Defendant, let alone all of the Defendants, from being sued to afford the public its right to scrutinize this conduct. This is not only true because Defendants include administrative and ministerial parties and not merely Members of the House and their respective aides. It is also true because the records Mr. Schilling requests are not related to the respondents' duties as legislators, however much the actions were performed using congressional

resources and however improperly participants may have invoked congressional authority. Instead, Mr. Schilling seeks records generated when certain Members and staff specifically chose to step outside of the legislative arena to assist private litigants in a private campaign to achieve a private end and otherwise to use their respective office and investigatory power for impermissible purposes. Again, for those reasons stated above and in the Amended Petition: this case arose because respondents and those working under their authority sought to serve an outside litigation campaign and/or assist the Executive branch toward fulfilling a political campaign promise and in doing so admittedly accepted in-kind services toward that end.

Absolute immunity is a powerful Constitutional hedge provided to *Members of Congress* to protect them from litigation for legislative acts. The Speech or Debate clause by its own terms does not apply to 4 out of the 5 defendants in this case in any form. And even with respect to the one Member of Congress who is named as a Defendant in this matter, the acts complained of are not legislative in nature, but are instead either ministerial in nature (record keeping, appointment, and supervisory duties of the Speaker are set forth in the Amended Petition at ¶ 9) or wholly improper (¶¶ 52-60).

### c. The Common Law Right of Access Expressly Applies to Records of this Nature

The Defendants seek to dismiss Mr. Schilling's claims under Rule 12 (b)(6) because they allege that the Common Law Right of Access does not apply to Congressional records. But the precedents cited by the defense are inapplicable and the suggestion that this Court should overrule its own prior precedents to the contrary are telling.

Defendants begin with the proposition that "Congress has undoubted authority to keep its records secret, authority rooted in the Constitution, longstanding practice, and current

congressional rules." Mot. To Dismiss at p. 28, citing *Goland v. CIA*, 607 F.2d 339, 346 (D.C. Cir. 1978). But the Defendants point to no evidence or even argument on the part of any individual, whether or not a party to this case, that Congress actually *has chosen* to keep the records at issue in this case secret, much less that such a determination could be justified.[5] The Defendants then acknowledge an unbroken string of cases in which this Court has applied the Common Law Right of Access to congressional records. Mot. to Dismiss at p. 28, citing *Judicial Watch I*, 474 F. Supp. 3d 305, 314 (D.D.C. 2020) and *Schwartz v. U.S. Dep't of Just.*, 435 F. Supp. 1203, 1203 (D.D.C. 1977). Defendants apparently believe, contrary to the D.C. Circuit's holding in *Schwartz*, that Congress has exempted itself not only from statutory sunshine laws but also from the common law right of access. *Id*. at 1204 (D.D.C. 1977) (holding "that Congress is subject to the common law rule which guarantees the public a right to inspect and copy public records" and explaining that even though "Congress has exempted itself from the requirements of the Freedom of Information Act … [t]hat Act, however, is not coextensive with the common law rule.")

The Defendants expressly or impliedly ask for this Court not only to disregard its own precedents, but also to overrule binding authority from the D.C. Circuit. For example, they state that the D.C. Circuit's affirmance of this Court's recognition in *Schwartz* that the Common Law Right of Access applied to congressional records should be discounted, even though that ruling is directly on point and even though the Defendants admit that a Congressman later attested to the

---

[5] To justify secrecy in the context of the common law right of access, a defendant must demonstrate "specific interests favoring secrecy outweigh the general and specific interests favoring disclosure." *Wash. Legal Found. v. United States Sentencing Comm'n*, 305 U.S. App. D.C. 93, 17 F.3d 1446, 1451 (1994), citing *Mokhiber v. Davis,* 537 A.2d 1100, 1108 (D.C. 1988). Defendants here have not even attempted to meet that burden or demonstrate which of their specific interests in secrecy might be at play or how they can be balanced against public interests in disclosure.

Court "that any responsive documents had been provided." Mot to Dismiss at p. 17-18, fn. 3. And the Defendants baldly assert that the D.C. Circuit "has never held that the common law right of access applies to the House or Senate." *Id*. at p. 17. But not only has this Court repeatedly recognized that there is a common law right of access to congressional records, binding precedent from the D.C. Circuit compels such a conclusion. In *Ctr. for Nat'l Sec. Studies v. United States DOJ*, 356 U.S. App. D.C. 333, 351, 331 F.3d 918, 936 (2003), the D.C. Circuit "held that the common law right of access extends beyond judicial records to the 'public records' of *all three branches* of government." (emphasis added). Indeed, the D.C. Circuit's holding that Congress is subject to the common law right of access dates back decades. It was first stated in *Schwartz v. United States DOJ*, 435 F. Supp. 1203, 1203 (1977) ("The general rule is that all three branches of government, legislative, executive, and judicial, are subject to the common law right.") and was reaffirmed in *Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d at 903. A concurring opinion in the D.C. Circuit as recently as last year further affirmed that the common law right of access applies to all three branches of government and noted that the "common law right of access is fundamental to a democratic state" and that "every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed." *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 993-94 (2021) (Judge Henderson, concurring) (internal citations omitted).[6]

---

[6] The same concurring opinion highlighted concerns about the use of the Speech or Debate Clause as a defense in common law right of access actions, and noted that when the need for secrecy is invoked "An official policy of secrecy must be supported by some legitimate justification that serves the interest of the public office." *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989, 994 (2021) (internal citations omitted).

To the extent that the records Mr. Schilling has requested in this case arise out of what he alleges is an improper use of the Oversight Committee's hearing and subpoenas procedures, the quasi-judicial role that that Defendant exercises in conducting Congressional oversight actually bolsters Mr. Schilling's common law right of access. The Defendant Committee on Oversight and Reform is the main investigative committee in the U.S. House of Representatives. It has authority to investigate the subjects within the Committee's legislative jurisdiction as well as "any matter" within the jurisdiction of the other standing House Committees'." Amend. Pet ¶ 10. As the D.C. Circuit recognized in *Wash. Legal Found. v. United States Sentencing Comm'n*, 89 F.3d 897, 901 (1996), the plainest application of the common law right of access and most firmly established historical application of the right involves documents "central to the process of adjudication." The D.C. Circuit further recognized that the public policy behind the Common Law Right of Access is to ensure "open legal proceedings and promot[e] public confidence in the legal process." Id.

In this case, Mr. Schilling has documented what he believes is an improper, and boastfully acknowledged, use of privately-financed staffing for a quasi-judicial proceeding undertaken or overseen by the Defendants. Because records relevant to this proceeding are "central to the process of adjudication" and because the D.C. Circuit has repeatedly held that the common law right of access applies to Congressional records, Mr. Schilling is entitled to proceed to the merits and demonstrate his entitlement to the specific records he seeks.

## V.     Conclusion

This Court should deny the Motion to Dismiss and order the Defendants to Answer Mr. Schilling's factual allegations so that this case can proceed to an appropriate adjudication on the merits.

Respectfully submitted this the 2nd day of June, 2022,

/s/ Matthew D. Hardin
Matthew D. Hardin, D.C. Bar No. 1032711
Hardin Law Office
1725 I Street, Suite 300
Washington, DC 20006
Phone: (434) 202-4224
Email: Matt@MatthewHardin.com

*Counsel for the Plaintiff*